**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-184-5 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| FREDDIE SANCHEZ, | ) | |
| | ) | |
| Defendant. | ) | |

Now before the Court is the motion of defendant Freddie Sanchez ("Sanchez") for compassionate release. (Doc. No. 628 (Motion).)[1] Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 630 (Response).) For the reasons that follow, the motion for compassionate release is denied.

## I. BACKGROUND

On May 28, 2020, Sanchez was sentenced to a custody term of 37 months, and six years of supervised release, following his guilty plea to one count of conspiracy to distribute and possess with intent to distribute heroin, cocaine, and cocaine base (crack), in violation of 21 U.S.C. § 846; and three counts of possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (Doc. No. 422 (Judgment); Minutes of Proceedings [non-document], 5/28/2020; *see* Minutes of Change of Plea [non-document], 11/22/2019; Doc. No. 264 (Plea Agreement).)

---

[1] Unless specifically noted, all record cites are to the present case.

Within a month of his release to supervision, Sanchez violated his supervised release. (Doc. No. 552 (Violation Report).) Specifically, Sanchez was indicted on one count each of conspiracy to possess with intent to distribute controlled substances and possession with intent to distribute controlled substances. (N.D. Ohio Case No. 1:22-cr-609, Doc. No. 21 (Superseding Indictment).) The new indictment was assigned to U.S. District Judge Benita Y. Pearson, and this Court referred the related supervised release violation in the present case to Judge Pearson. (Doc. No. 599 (Order Regarding Supervised Violation Report).) After a trial on the charges in the superseding indictment in Case No. 1:22-cr-609, a jury convicted Sanchez of both charges. (N.D. Ohio Case No. 1:22-cr-609, Doc. No. 96 (Verdict Forms).) On July 9, 2025, Judge Pearson sentenced Sanchez to a custody term of 177 months on the charges in N.D. Ohio Case No. 1:22-cr-609 and 36 months on the supervised release violation in the present case, the sentences were imposed to run consecutively. (Doc. No. 602 (Order on Supervised Release Violation); N.D. Ohio Case No. 1:22-cr-609, Doc. No. 105 (Judgment).) Sanchez is currently serving his sentences at Hazelton FCI and has an anticipated release date of May 26, 2038.[2]

On January 5, 2026, Sanchez filed the present motion for compassionate release. In his *pro se* motion, Sanchez represents that he should receive a sentence reduction because he was imprisoned for much of the COVID-19 pandemic. (Doc. No. 628, at 2–5.) Citing unreported decisions discussing the difficulties faced by inmates during the pandemic, Sanchez suggests that he "should be allowed a sentence reduction of a day and a half to two days for each day he was incarcerated during the Pandemic from March 11, 2020 to May 5, 2023 when the Pandemic ended." (*Id.* (collecting unreported decisions).)

---

[2] *See* https://www.bop.gov/inmateloc/, last visited 2/6/2026.

The government believes that the motion should be denied because Sanchez has failed to establish the existence of extraordinary and compelling reasons under the governing statute and because the sentencing factors at 18 U.S.C. § 3553 do not weigh in favor of early release. (Doc. No. 630, at 5.) The Court agrees with the government as to both arguments.

## II. MOTION FOR COMPASSIONATE RELEASE

### A. Governing Law

The sentencing court has no inherent authority to reconsider and/or modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001)); *see United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) ("Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute.") Under 18 U.S.C. § 3582(c), a court may only modify a term of imprisonment under the following circumstances: (1) upon a motion of the Director of the Bureau of Prisons ("BOP") or defendant for compassionate release; (2) as expressly permitted by statute or by Fed. R. Crim. P. 35; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. § 3582(c)(1)–(2).

Sanchez does not seek relief under Rule 35, nor does he claim that he was sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered. Instead, he claims that he is entitled to a compassionate release. Under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1)

'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

The policy statement applicable to compassionate release motions, U.S.S.G. § 1B1.13, was amended effective November 1, 2023, and describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. These categories are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b).

### B. Extraordinary and Compelling Reasons

Sanchez does not suggest—and there is no evidence by which the Court may find—that he has exhausted his administrative remedies. As the party seeking a compassionate release, it is Sanchez's burden to show that he is entitled to relief, including that he has properly exhausted his administrative remedies. *See United States v. Williams*, 458 F. Supp. 3d 939, 943 (W.D. Tenn. 2020) ("The defendant bears the burden of showing he has exhausted his administrative remedies

4

and is entitled to compassionate release." (citations omitted)).

But even if the Court were to conclude that Sanchez had properly exhausted, he would still have to demonstrate that he is entitled to relief under the compassionate release statute (18 U.S.C. § 3582(c)(1)(A)) and the relevant BOP policy statement (U.S.S.G. § 1B1.13). The Court, therefore, turns to a consideration of whether defendant has demonstrated the existence of extraordinary and compelling reasons identified in § 3582(c)(1)(A)(i), and discussed in detail in § 1B1.13(b), as amended.

Sanchez appears to invoke U.S.S.G. § 1B1.13(b)(1)—Medical Circumstances of the Defendant—as the basis for compassionate release. Pertinent to the present motion, § 1B1.13(b)(1)(D) provides that extraordinary and compelling reasons support early release if the defendant presents the following circumstances:

>    (i)   the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
>    (ii)  due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
>    (iii) such risk cannot be adequately mitigated in a timely manner.

Sanchez has not demonstrated that he meets any of the requirements of U.S.S.G. § 1B1.13(b)(1)(D). In particular, he has not shown that he is housed in a facility affected by an ongoing outbreak of infectious disease, or that his facility is affected by an ongoing public health emergency. There is no current outbreak of infectious disease at Hazelton FCI, and BOP's statistics

5

indicate that there are currently zero open cases of COVID-19 at Hazelton FCI.[3] And, as the government correctly notes, the COVID-19 national emergency was terminated by President Joseph Biden on April 10, 2023. Pub. L. No. 118-3. Moreover, Sanchez has not suggested, let alone demonstrated with medical documentation, that he suffers from one or more medical conditions that would place him at a higher risk of suffering severe complications or death in the event his facility was experiencing an infectious disease outbreak or a public health emergency.

Rather, he argues that he is entitled to early release by virtue of having served part of his sentence during the COVID-19 pandemic, due to the more restrictive, and, at times, harsher conditions resulting from measures taken by the BOP to slow the spread of the virus. Sanchez's complaints about the conditions he previously endured during the pandemic do not constitute compelling reasons for release. *See United States v. Traylor*, 16 F.4th 485, 486–87 (6th Cir. 2021) (A defendant's mere incarceration during the COVID-19 pandemic does not establish extraordinary and compelling reasons for release (quoting *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction" (further citation omitted))); *see also United States v. Farmer*, No. 19-cr-427, 2022 WL 47517, at *4 (S.D.N.Y. Jan. 5, 2022) ("[G]eneralized statements about the conditions of confinement do not constitute compelling reasons for release." (citations omitted)). Because all inmates at his facility were subjected to the same hardships and restrictions during the pandemic, "conditions at the prison do not constitute a reason why [Sanchez] should be released." *United States v. Orozco*, 5:15-cr-101, 2023 WL 1452053, at *3

---

[3] *See* https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp, lasted visited 2/6/2026.

(E.D. Ky. Feb. 1, 2023) (citing *United States v. Peterson*, No. 1:17-cv-20243, 2021 WL 2682819, at *3 (E.D. Mich. June 30, 2021) (finding that defendant's claims regarding conditions of confinement did not warrant compassionate release because "many if not all of [the defendant's] fellow inmates must endure similar hardships")). Accordingly, the Court finds that Sanchez has failed to demonstrate the existence of an extraordinary and compelling reason to justify early release.

To the extent that Sanchez is offering the novel argument that his time spent in custody during the pandemic should be subject to a multiplier and his anticipated release date be re-calculated accordingly, this Court is without authority to entertain it. The BOP, and not the sentencing court, is responsible for the execution of a sentence, and it is the prerogative of the BOP to determine whether a prisoner is entitled to any sentencing credits. *United States v. Wilson*, 503 U.S. 329, 334–37, 112 S. Ct. 1351, 117 L. Ed. 2d 593 (1992); *see United States v. Wells*, 473 F.3d 640, 645 (6th Cir. 2007). Moreover, judicial claims challenging the BOP's execution of a prisoner's sentence are not directed to the sentencing court, but are brought as a habeas action under 28 U.S.C. § 2241 in the judicial district in which the prisoner is confined, after proper exhaustion of administrative remedies. *See United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001); *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998); *Little v. Hopkins*, 638 F.2d 953, 954 (6th Cir. 1981) (collecting cases).

### C.  Sentencing Factors

But even if Sanchez had cleared the initial hurdle of demonstrating the existence of extraordinary and compelling reasons, the Court would still have denied his motion because the sentencing factors in 18 U.S.C. § 3553(a) do not favor release. The nature and circumstances of

Sanchez's supervised release violation—conspiracy with intent to distribute controlled substances and distribution of controlled substances—are serious. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir 2010) ("To be sure, drug trafficking is a serious offense, that, in itself, poses a danger to the community." (citations omitted)). Additionally, the supervised release violation was not Sanchez's first drug-related offense. As noted, the underlying convictions in this case were for the same dangerous activities. Sanchez was one of 15 individuals charged in a large-scale drug trafficking organization, wherein Sanchez and his co-defendants obtained substantial quantities of heroin and fentanyl from co-conspirators to redistribute throughout the Lorain, Ohio area. (Doc. No. 421 (Presentence Investigation Report), at 7–8 ¶¶ 15–22.)

Indeed, Sanchez's criminal history—which began when he was only 15 years of age and spans more than 20 years—is replete with drug trafficking convictions. (*Id.* at 13–14, 16–17 ¶¶ 49, 51, 55, 57.) His criminal record also includes convictions for other dangerous crimes, including aggravated rioting (and aggravated rioting with gang specification) and felonious assault. (*Id.* at 12, 18 ¶¶ 46, 58.) In one such instance of aggravated rioting, Sanchez and several others were involved in an incident in which two individuals were stabbed in a bar in Elyria, Ohio: one victim sustained serious injuries and the other victim died. (*Id.* at 12 ¶ 46.) Similarly, his felonious assault conviction, which included a gang specification, involved serious physical harm to another or to their unborn child. (*Id.* at 18 ¶ 58.)

Prior custody sentences for drug trafficking and other violent crimes have failed to discourage Sanchez from returning to dangerous and destructive behavior like drug trafficking. In fact, as set forth above, the present supervised release violation occurred within a month of his release from prison. And even in prison, Sanchez has demonstrated that he is unable or unwilling

8

to conform his behavior. In 2013, while serving a custody sentence for felonious assault, Sanchez was convicted of conveying drugs of abuse within the state penitentiary. (*Id*. at 19 ¶ 59.) The Court has grave doubts that, if released early, Sanchez would be able to abide by any condition of release the Court might set, including the condition that he refrain from engaging in illegal behavior.[4]

After considering all of the § 3353(a) factors, the Court finds that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, afford adequate deterrence, and protect the public from further crimes of the defendant. Based on these same facts, the Court also finds that defendant continues to pose a danger to the community.

### III. CONCLUSION

For the foregoing reasons, the Court denies defendant's motion for a compassionate release.

**IT IS SO ORDERED**.

Dated: February 6, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[4] Of course, even if the Court agreed to reduce Sanchez's sentence on his supervised release violation, Sanchez would still be required to continue to serve his sentence in N.D. Ohio Case No. 1:22-cr-609.